IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**ANDREW JAMES**                                                                                                **PLAINTIFF**

**V.**                                                         **NO. 4:22-CV-123-DMB-JMV**

**LULA STONE, LPN, et al.**                                                           **DEFENDANTS**

**OPINION AND ORDER**

Andrew James sued Centurion of Mississippi, LLC, and some of its employees alleging Eighth Amendment violations of his right to adequate medical treatment for his diabetes while incarcerated and state law claims for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. The defendants have moved for summary judgment based "on the limited issue of exhaustion." Because James has not demonstrated the unavailability of his administrative remedies, summary judgment will be granted.

**I**
**Procedural History**

On August 4, 2022, Andrew James filed a complaint in the United States District Court for the Northern District of Mississippi against Lula Stone, LPN; Olivia Brooks, LPN; Shamelia Smith, LPN; Keshu L. Jones, LPN; Zoranna Jones, LPN; Lenora Robinson, LPN; Dalamaon Harris, LPN; Calvin Stewart, LPN; Centurion of Mississippi, LLC; and Jane and John Does 1–15, all in their individual and official capacities. Doc. #1. On September 27, 2022, James filed an amended complaint against the same defendants[1] to correct errors in the spelling of some of the

---

[1] The original complaint lists Centurion of Mississippi, LLC, as a defendant. Doc. #1. The amended complaint's caption omits Centurion's name but identifies Centurion as a defendant in its body. Doc. #7 at 1, 3–4. *See Jones v. Tex. Tech Univ.*, 656 F.2d 1137, 1143 (5th Cir. 1981) ("[T]he caption of a complaint is not necessarily determinative."). According to the amended complaint, Centurion "contracted with the MDOC to provide medical, dental, and mental health services to persons in their custody at Parchman." *Id.* at 3–4.

defendants' names.² Doc. #7 at 1. The amended complaint asserts a 42 U.S.C. § 1983 claim based on alleged violations of James' Eighth Amendment rights—specifically, that the defendants were deliberately indifferent to providing James with necessary medical treatment for his Type I diabetes during his incarceration at the Mississippi State Penitentiary in Parchman, Mississippi. *Id.* at 4, 10–12. The amended complaint also asserts state law claims for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. *Id.* at 12–15. James seeks injunctive and declaratory relief as well as nominal, compensatory, and punitive damages, along with reasonable attorney's fees. *Id.* at 16.

On November 28, 2022, each defendant separately answered the amended complaint. Docs. #13 to #21. On March 3, 2023, the defendants filed a motion for summary judgment based on James' "failure to exhaust his administrative remedies." Doc. #35 at 1. The motion is fully briefed. Docs. #36, #44, #46.³

## II
## Standard

"The party moving for summary judgment bears the initial burden of 'informing the district court of the basis for its motion.'" *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A court shall enter summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, while a dispute about that fact is genuine if the

---

² The amended complaint's caption indicates the defendants are sued "all in their individual capacities" but its body specifies they are "sued in their individual capacities for monetary damages and in their official capacities for injunctive relief." Doc. #7 at 1, 4; *see id.* at 12. And while the original complaint referenced and attached exhibits, no exhibits are attached to the amended complaint.

³ In violation of Local Rule 7(b)(4), the defendants filed their reply one day late and without formally requesting an extension. *See* Doc. #46 at 1 n.1. In the interest of judicial efficiency and because James does not object to the untimely reply, the violation is excused in this instance.

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (cleaned up); *see Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014) ("A genuine issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party.") (citation omitted). "All reasonable inferences must be viewed in the light most favorable to the party opposing summary judgment, and any doubt must be resolved in that party's favor. At the same time, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (citations and internal quotation marks omitted).

When the movant would not bear the burden of persuasion at trial, the movant may satisfy the initial summary judgment burden "by pointing out that the record contains no support for the non-moving party's claim." *Wease v. Ocwen Loan Servicing, LLC*, 915 F.3d 987, 997 (5th Cir. 2019) (citation omitted). If the moving party meets this initial burden, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (cleaned up). When "a defendant properly moves for summary judgment, the non-movant plaintiff must bring forward sufficient evidence to demonstrate that a genuine issue of material fact exists on every element of a claim." *Aguillard v. La. Coll.*, 824 F. App'x 248, 250 (5th Cir. 2020) (citation omitted).

### III
### Factual Background

Andrew James is presently incarcerated at the Mississippi Department of Corrections ("MDOC") facility in Parchman, Mississippi.[4] Doc. #43-1 at PageID 417. According to the

---

[4] According to the amended complaint, James was incarcerated at Parchman in 2019 and 2020; "[i]n February of 2021, [he] was transferred to the Marshall County Correctional Facility ('MCCF');" he "was incarcerated at MCCF until he

amended complaint, James "filed numerous ARPs regarding his diabetes and lack of medical treatment," he "never received a response to his ARPs," and "the ARP process was rendered unavailable to him by repeated failures to either properly file his ARPs and/or ignoring those that were properly filed." Doc. #7 at 9, 10.

After the filing of James' amended complaint, the defendants issued a subpoena to MDOC requesting "all [James'] Administrative Remedy Program records … between January 1, 2017 and the present." Doc. #34-1. MDOC responded by providing files for three ARP requests by James. Doc. #35-1.

In the first ARP, dated November 6, 2018, James complains that at Parchman he was deprived of regular showers, the use of equipment to clean his cell or "daily housekeeping," clean laundry, and haircuts. *Id*. at PageID 354. The ARP Director responded by telling James his ARP could contain "[o]nly one complaint/request" to be accepted. *Id*. at PageID 353.

In the second ARP, dated October 22, 2019, James complains that of two books mailed to him by his family, one was erroneously returned for being a "hardback book" and the other, "a 2019-2020 weekly calendar," is missing.[5] *Id*. at PageID 357–58. In response, James was advised that the "planner was hardback." *Id*. at PageID 360. The missing book mentioned in the ARP was not addressed in the response.

In the third ARP, dated September 19, 2020, James complains that he is "Housed around other inmates and not being supervised 'Medically;'" he is "at risk of … getting hit in the spot that is only 'skin' Covering [his] Brain" and has "been waiting on a titanium Plate to be put in [his]

---

suffered severe head trauma in an assault and spent several months in non-MDOC hospitals recovering;" and "was returned to Parchman [in late 2021]." Doc. #7 at 2, 4.

[5] It appears James later withdrew this ARP believing he needed to do so to pursue a different request. Doc. #35-1 at PageID 363. James says MDOC officials told him he could only have one ARP at a time. Doc. #43-1 at PageID 417.

head;" he is "surrounded by hard stuff to hit [his] head on by accident or fall and hit that spot due to a Either sesure or a high or Low blood sugar or high or low blood pressure, 'And its very well known that [he has] very bad problems with those Medical Conditions;'" and he has "already done 3 A.R.P.s exactly like this one … and still to this day [has] not had any type of response." *Id.* at PageID 366. MDOC sent James multiple responses to this third ARP. *Id.* at PageID 367–74. On First Step Response Forms dated October 26, 2022, and signed by "Dwight Moore, HSA," MDOC (1) acknowledged James "had a partial craniotomy" before arriving at MSP and advised "MSP Medical has a 24 Hour coverage … for all medical concerns;" and (2) told James he would be placed on a medical appointment schedule to be evaluated and acknowledged he wears protective head gear. *Id.* at PageID 368–69. James received and signed these First Step Response Forms on November 2, 2022, indicating he was dissatisfied with the responses. *Id.* at PageID 371,[6] 372.[7] In a Second Step Response Form dated December 1, 2022, Dr. William Brazier, "MSP Medical Director," told James:

> I have read your complaint. I am in the process of reviewing your files concerning your craniotomy as well as scheduling you to be seen by ophthalmology as soon as possible. I intend on speaking with you in person so I can figure out how best to accommodate your needs going forward, including housing and specialist appointments. I will make sure that any treatment plan is followed up on. I apologize for your situation, and appreciate your patience.

*Id.* at PageID 373.

### IV
### Analysis

The defendants argue summary judgment on all James' claims is warranted because James

---

[6] James wrote that "[t]he Medical Staff are way in another unit and we are barely ever checked on by security, so how would I get help if i Got out of bed and fell and hit my head and couldn't Move or Died?" Doc. #35-1 at PageID 371.

[7] James also wrote that "Medical Staff keep telling me they E-mail Jackson to Find out whats the hold up on my surgery and i don't know anything about whats taking so Long and my family keep getting Lied to! The Hospital told me id have the surgery over a year ago!" Doc. #35-1 at PageID 372.

5

"failed to properly exhaust his claims" against them and "[t]he Court should not accept [James'] conclusory allegation of the ARP's unavailability." Doc. #36 at 7–8. James responds that he is excused from the exhaustion requirement because he "had no administrative remedies … available." Doc. #44 at 3. The defendants reply that James has not met the high burden of claiming unavailability of administrative remedies. Doc. #46 at 3.

### A. Exhaustion, The PLRA and MDOC's ARP

Because James brought this suit as a prisoner, the Prison Litigation Reform Act ("PLRA") governs his claims. 42 U.S.C. § 1997e. Under the PLRA, inmates seeking to challenge prison conditions must exhaust "administrative remedies" before challenging prison conditions in court.[8] *Id.* at § 1997e(a). The Fifth Circuit applies "a strict approach" to the PLRA's exhaustion requirement.[9] *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008); *see Lane v. Harris Cty. Med. Dep't*, 266 F. App'x 315, 315 (5th Cir. 2008) ("[T]he prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules."). Exhaustion is determined by "the processes established by the prison" and not the PLRA itself. *Moussazadeh v. Tex. Dep't of Crim. Just.*, 703 F.3d 781, 788 (5th Cir. 2012); *see Butts v. Martin*, 877 F.3d 571, 582 (5th Cir. 2017) ("[P]risoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself.") (citation omitted).

Mississippi law authorizes MDOC to promulgate an "administrative review procedure at each of its correctional facilities." Miss. Code Ann. § 47-5-801. MDOC has adopted a two-step

---

[8] The PLRA's exhaustion requirement applies to § 1983 claims. *See* 42 U.S.C. § 1997e(a). "[A] prisoner must … exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

[9] Exhaustion is an affirmative defense and the burden to show its absence is on a defendant. *Jones*, 549 U.S. at 216. "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).

6

Administrative Remedy Program ("ARP") through which prisoners may seek formal review of their complaints or grievances while incarcerated. *Yankton v. Epps*, 652 F. App'x 242, 245 (5th Cir. 2016) (citing Miss. Code Ann. § 47-5-801, *et seq.*); *Wilson v. Epps*, 776 F.3d 296, 300 n.2 (5th Cir. 2015). Inmates must submit their grievance in writing to the Legal Claims Adjudicator within thirty days of the incident. *Inmate Handbook*, Miss. Dep't of Corrs. (June 2016), at ch. VIII(IV)(A).[10] If the request regarding the grievance meets the specified criteria, it will be accepted into the ARP and proceed to the first step. *Id.* at ch. VIII(V). Notice of acceptance or rejection of the request is provided using a Form ARP-1. *Id.* at ch. VIII(VI).

MDOC's ARP does not promise inmates will receive a response after they complete the first step. *See generally id.* at ch. VIII. If an inmate receives a response and is still dissatisfied, he must use Form ARP-2 and "give a reason for [his] dissatisfaction with the previous response." *Id.* at ch. VIII(IV)(F). If an inmate does not receive a response after the first step, "expiration of response time … entitle[s] the inmate to move on to the next step in the process." *Id*. at ch.VIII(VIII)(A). An inmate is required to follow this process before he may file a lawsuit. *Id.* at ch. VIII(I).

### B. Exhaustion Arguments

The defendants submit James did not exhaust his claims because (1) "[t]he ARP determines whether [James] properly exhausted his administrative remedies;" (2) MDOC has no record of James' diabetes-related requests; and (3) "[t]he Court should not accept [James'] conclusory allegation" in his amended complaint that the ARP was unavailable. Doc. #36 at 5, 7, 8.

---

[10] The 2016 version of the *Inmate Handbook* was the operative inmate handbook at the time James filed his complaint, *see* Doc. #36 at 6 n.3, which is why it is cited by the Court. MDOC replaced the 2016 version with an updated 2023 version. *See Inmates,* Inmate Handbook (2023), https://www.mdoc.ms.gov/inmates (cover stating "Revised 2023"). It does not appear that the 2023 version of the handbook changed the provisions relevant here.

7

James responds that there is no dispute he did not complete the ARP process but he is excepted from the exhaustion requirement because the ARP process was unavailable to him. Doc. #44 at 5. In support of his position that he is excepted from the exhaustion requirement, James relies on two of his own affidavits attached to his response to the summary judgment motion. Doc. #43-1 at PageID 417–20.

The defendants reply that (1) the Court should disregard James' self-serving affidavits because they offer vague, unspecific, and inconsistent allegations, and contradict other evidence in the record;[11] (2) even if the Court considers the affidavits, they do not render the ARP unavailable; and (3) "[a]ny failure by MDOC to process or respond to [James'] grievances does not render the ARP unavailable." Doc. #46 at 4, 6, 9.

### 1. James' affidavits

"A party can present critical evidence, though, in many forms, even self-serving affidavits." *Loggerhead Holdings, Inc. v. BP, PLC (In re Deepwater Horizon)*, 48 F.4th 378, 382 (5th Cir. 2022). "Self-serving evidence must only comport with the standard requirements of Federal Rule of Civil Procedure 56." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021). "Self-serving affidavits and declarations, like all summary judgment evidence, must 'be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *Id.* (quoting Fed. R. Civ. P. 56(c)(4)). However, a court should not consider self-serving evidence if it is "conclusory, vague, or not based on personal knowledge." *Id.*

---

[11] According to the defendants, the affidavits are inconsistent with other evidence in the record because James claims (1) he never received copies of the Step Two form but signed a Step One response, indicating he would proceed to Step Two; and (2) he never received copies of the ARP policy, which the defendants say is not true because one of the ARP responses included instructions. Doc. #46 at 2 (citing Doc. #35-1 at PageID 361).

"Determining whether a particular affidavit is vague or conclusory is necessarily a fact-bound analysis that will depend on the facts and claims at issue." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 292 (5th Cir. 2020). "Broad legal or factual assertions in an affidavit that are unsupported by specific facts are generally held to be conclusory." *Id.*; *see Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013) (vague and general statements about moral character insufficient to create genuine issue of material fact). "By contrast, more detailed and fact-intensive affidavits can raise genuine issues of material fact that preclude summary judgment." *Id.*; *see Guzman*, 18 F.4th at 161 (affidavits were competent summary judgment evidence because, among other reasons, they concerned specific "personal experiences" and were "particularized rather than vague or conclusory").

The substantive portion of James' first affidavit states:

1. I am Andrew James, a person currently incarcerated at the Mississippi State Penitentiary at Parchman ("Parchman")[.] I am above the age of 18, of sound mind, and otherwise competent to make this Affidavit. The following averments are based on my personal knowledge.

2. While incarcerated at Parchman, I filed numerous Administrative Remedy Program ("ARP") requests between January 1, 2020, and September 1, 2021, related to the treatment of my diabetes.

3. I never received any response, rejection, or even a confirmation of receipt, to any of the ARPs that I filed pertaining to my diabetes treatment.

4. I was never provided with a First Step Response Form ARP-2 that was necessary to proceed to step two of the ARP process.

5. I was told repeatedly by persons working for the Mississippi Department of Corrections that I could not have more than one grievance filed at a time.

6. I was also told that my ARP requests must be submitted to a specific box located within my unit. This box was often inaccessible for days or weeks at a time when it was removed from the unit.

7. After my head injury in 2021, I began filing ARP requests related to my skull, instead of my diabetes.

8. After three attempts at obtaining a response to an ARP related to my skull, I finally received one in December of 2022.

9. Despite receiving a response to that ARP indicating that I would–at a minimum–have a conversation with the ARP respondent regarding treatment for my skull, this has not yet occurred.

Doc. #43-1 at PageID 417–18. The substantive portion of James' second affidavit states:

1. I am Andrew James, a person currently incarcerated at the Mississippi State Penitentiary at Parchman. I am above the age of 18, of sound mind, and otherwise competent to make this Affidavit. The following averments are based on my personal knowledge.

2. I have never been provided with a copy of the Administrative Remedy Program policy.

3. I have requested copies of this policy from the Inmate Legal Assistance Program but never received a response.

4. I requested step II ARP Forms from the Inmate Legal Assistance Program for my diabetes related ARPs, but I never received them.

5. The reason I began filing ARPs related to my skull is because it is life-threatening.

6. I have personally observed corrections officers fishing documents out of the ARP box without removing the lock on that box. This occurred while I have been incarcerated at Parchman.

*Id.* at PageID 419–20.

As to the defendants' argument about the affidavits contradicting other evidence, none of the case law the defendants cite,[12] nor anything the Court has found, holds self-serving affidavits cannot be considered just because they contradict other evidence. To the contrary, "a nonmovant's statement may not be rejected merely because it is not supported by the movant's … divergent statements." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016).

---

[12] *See* Doc. # 46 at 4.

Regarding vagueness, the defendants correctly point out that James "contends he witnessed or experienced the occasional inaccessibility of the grievance box, the removal of grievances from the box, and the unanswered request for a certain ARP form" but "fails to provide any details that would enable the Court to determine whether those events occurred during the relevant time and with respect to any of [his] diabetes-related grievances." Doc. #46 at 5. Nor does James specify the person or persons he says told him that he could not have more than one grievance at a time[13] or that his requests must be submitted to a specific box, or the particular corrections officers who he says fished documents out of the locked ARP box. *See generally* Doc. #43-1. Similarly, James' affidavits do not detail when the box was inaccessible "for days or weeks" (or who removed it from the unit). *Id.* And though James says he filed numerous requests related to his diabetes between January 1, 2020, and September 1, 2021, he does not specify their contents, the number of requests, or the dates submitted (and does not provide any such ARPs). Doc. #43-1 at PageID 417–18. For these reasons, the Court declines to consider James' affidavit statements to the extent they are unsupported by sufficient detail and/or specific facts.[14]

### 2. Unavailability

The defendants argue that the Court should not accept the amended complaint's "conclusory allegation of the ARP's unavailability." Doc. #36 at 8 (citing Doc. #7). James responds that (1) the MDOC records support his position because they show he withdrew his 2019 ARP so that he could pursue another claim and was not receiving responses; (2) he was never provided a copy of the ARP policy or the necessary forms despite his requests; (3) the Inmate

---

[13] The subpoenaed documents reflect the ARP director advised James that an ARP could contain only one grievance, *see* Doc. #35-1 at PageID 353, not that he could not have more than one grievance at a time.

[14] *See* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2738 (4th ed. 2023) (citation omitted) ("Where the affidavit includes both competent and incompetent evidence, the Court should disregard the incompetent evidence but give full consideration to that which is competent.").

11

Handbook's requirements for filing an ARP are unclear; and (4) all three instances of unavailability previously identified by the Supreme Court in *Ross v. Blake* are present because the ARP operates as a simple dead end, was "so opaque that it [became] … incapable of use," and the conduct of the MDOC staff also made his administrative remedies unavailable. Doc. #44 at 4–5, 6, 9 (citations omitted). The defendants reply that "the arguments raised … do not establish the ARP as unavailable" because (1) "the ARP was available to [James] and utilized by [him], but not completed with respect to [his] diabetes-related complaints;" (2) "neither inadequacies nor ignorance renders the ARP unavailable;" and (3) "any failure by MDOC to process or respond to [James'] grievances does not render the ARP unavailable." Doc. #46 at 6, 9.

Generally, where a prisoner fails to properly exhaust his available prison grievances before filing suit, dismissal is compulsory. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). However, the PLRA contains "one textual exception to its otherwise stringent exhaustion requirement: availability." *Valentine v. Collier*, 978 F.3d 154, 160 (5th Cir. 2020). Inmates who fail to exhaust can still proceed in court by showing that administrative remedies were not "available." *Ross v. Blake*, 578 U.S. 632, 642 (2016); *see* §1997e. Unavailability is a fact-specific inquiry. *Valentine*, 978 F.3d at 160. The burden of showing unavailability rests with the plaintiff. *See id.*

The United States Supreme Court has identified three examples when prison administrative remedies should be considered unavailable:

> (1) when the administrative remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Stilley v. Garland*, No. 21-60022, 2022 WL 1568363, *3 (5th Cir. May 18, 2022) (quoting *Ross*,

12

578 U.S at 643–44). "To satisfy the 'dead end' exception, [a plaintiff] must provide evidence that … administrators are 'unable or consistently unwilling to provide any relief.'" *Donahue v. Wilder*, 824 F. App'x 261, 266 (5th Cir. 2020) (quoting *Ross*, 578 U.S. at 643). In *Ross*, as an example of a dead end, the Supreme Court hypothesized a situation where a prison handbook directed inmates to submit their grievances to a particular administrative office but in practice that office disclaimed any capacity to consider those petitions. *Ross*, 578 U.S. at 643. The Supreme Court also gave a second example where administrative officials have apparent authority to respond but decline ever to exercise it. *Id.*

James provides nothing beyond his affidavits—which the Court above explained will not be considered to the extent they are vague and lacking sufficient detail—with respect to his claims of the unavailability of administrative remedies. Consequently, he has not overcome his burden to defeat summary judgment on failure-to-exhaust grounds regarding treatment for his diabetes.[15] *Kariuki*, 709 F.3d at 505 ("Self-serving allegations are not the type of significant probative evidence required to defeat summary judgment. … [W]ithout more, a vague or conclusory affidavit is insufficient to create a genuine issue of material fact in the face of conflicting probative evidence."); *see Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir. 1991) (conclusory affidavit did not defeat summary judgment because, "[w]hat is needed in an affidavit of this sort are facts, reasons, observations, and explanations—in a word, *evidence*—not sweeping conclusions") (emphasis in original). The defendants' motion for summary judgment will be granted.

---

[15] The ARPs obtained under the defendants' subpoena do not mention the word "diabetes." In one, James references his "low blood sugar" but seemingly only in passing to describe a hypothetical situation that if a spot on his head is hit because of a "sesure *or* a high or low blood sugar *or* high or low blood pressure," he is "at risk of falling out any time of the day or night and hitting [his] head on something." Doc. #35-1 at PageID 366 (emphases added). James attests that his ARPs after 2021 concerned his skull, not his diabetes. Doc. #43-1 at PageID 418.

## V
## Conclusion

The defendants' motion for summary judgment [35] is **GRANTED**. A separate judgment will be issued.

**SO ORDERED**, this 4th day of January, 2024.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**
